COOPERATIVA REFACCIONARIA DE COLONOS DE LA CENTRAL LOS CAÑOS y SANTOS TIRADO RUIZ, recurrentes, *v.* EL REGISTRADOR DE LA PROPIEDAD DE ARECIBO, recurrido.

Número 1307.
*Sometido:* 1 de febrero de 1954. *Resuelto:* 26 de febrero de 1954.

*Félix Ochoteco, Jr.,* abogado de los recurrentes; el Registrador recurrido no compareció.

EL JUEZ ASOCIADO SEÑOR ORTIZ emitió la opinión del tribunal.

La Cooperativa Refaccionaria de Colonos de la Central Los Caños presentó en el Registro de la Propiedad de Arecibo, para su inscripción, un contrato de refacción agrícola que había celebrado con los cónyuges Santos Tirado Ruiz y Manzana Cruz. El aludido documento fué devuelto por el Registrador, sin practicar operación alguna, por los siguientes fundamentos:

1. No haberse acompañado al documento en cuestión $3.25 en sellos de Rentas Internas, correspondientes a los derechos arancelarios de ley; y

2. No haberse otorgado el contrato en escritura pública y sí en documento privado.

Como base común a los dos expresados fundamentos, aduce el Registrador en su nota que se trata de un contrato cuya cuantía excede de $2,500 siendo por tanto requisito de ley, tanto el otorgamiento en escritura pública como el pago de los correspondientes aranceles. Véase secciones 6 y 11 de la Ley Sobre Contratos de Refacción Agrícola, enmendada por la Ley núm. 139 de 13 de mayo de 1943, Leyes de ese año, pág. 429; y la Ley núm. 167 de 14 de mayo de 1943, Leyes de ese año, pág. 595.(¹)

---

(¹) Las secciones 6 y 11 citadas disponen lo siguiente:

"Sección 6.—Así los contratos de refacción agrícola como los de siembra y molienda de cañas, deberán formalizarse en escritura pública y anotarse en el registro que se instituye por la sección 7 de esta Ley.

"En dichos contratos de refacción agrícola y siembra y molienda de cañas deberá hacerse constar la descripción de las fincas objeto de los mismos, la naturaleza del título del terrateniente y las condiciones estipuladas por las partes; *Disponiéndose,* que cuando en los contratos de refacción agrícola la cuantía no exceda de dos mil quinientos (2,500) dólares y sea parte o intervenga directa o indirectamente alguna agencia creada en virtud de leyes del Congreso de los Estados Unidos de América, o asociaciones cooperativas para fines no pecuniarios organizadas de acuerdo con las leyes de Puerto Rico, para dar facilidades de crédito a los agricultores, dichos contratos de refacción podrán formalizarse en escritura pú-

El caso se reduce, por lo tanto, a la determinación de la cuantía del contrato presentado por la recurrente al Registro de Arecibo, para determinar si debió cumplir con los requisitos exigídosle.

La recurrente sostiene que se trata de un documento que incluye tres contratos de refacción "distintos e independientes". Basa su contención en que conforme a las cláusulas del contrato, la Cooperativa concede al agricultor concernido un préstamo de $1,000 durante cada una de las cosechas de 1954, 1955 y 1956, venciéndose el préstamo el 30 de junio de cada uno de dichos tres años de zafras. Se arguye, además, que cada una de las cosechas afectadas se gravan separadamente hasta la suma de $1,000.

Concluye la recurrente, de todo lo anterior, que lo que ella solicita es la inscripción de tres contratos distintos con una cuantía separada de $1,000 cada uno, y que siendo dicha cuantía menor de $2,500 erró el Registrador al actuar en la forma antes expresada.

blica o en documento privado suscrito ante notario, de acuerdo con la Ley Estableciendo un Registro de Affidavits, aprobada el 12 de marzo de 1908; *Disponiéndose, además*, que no se necesitará que el funcionario debidamente autorizado de la agencia creada por las leyes del Congreso de los Estados Unidos de América, suscriba su nombre o reconozca la ejecución del documento privado ante un notario público u otro funcionario.

"Sección 11.—Los contratos a que se refiere esta Ley devengarán por el principal del préstamo, sin incluir el importe de créditos para intereses, intereses moratorios, ni los de costas y honorarios de abogado, los siguientes derechos al ser anotados en el Registro de Contratos Agrícolas:

"(*a*) Por la presentación, nota de registro y nota al pie del título cuando el préstamo exceda de mil (1,000) dólares, $0.25.

"(*b*) Por la anotación o nota marginal extensa practicada para la inscripción, cesión, ampliación o modificación de contratos de refacción agrícola o de préstamos garantizados por factorías con azúcares por percibir, se cobrarán los derechos que se fijan en la escala siguiente:

"Por cada préstamo que no exceda de:

"$100 ........................................... $0.25
"De más de $100 hasta $200..................... $0.50
"De más de $200 hasta $500..................... $1.00
"De más de $500 hasta $1,000.................. $2.00

"Cuando la cuantía del contrato exceda de $1,000, se cobrará $2 por los primeros $1,000 y 25 centavos adicionales por cada $1,000 o fracción de $1,000.

"Por cada anotación o nota marginal concisa que deba practicarse se

■■■ Fué correcta la conclusión del Registrador al efecto de que se trata de un único contrato con una cuantía de $3,000 y por tanto sujeto al pago de aranceles y al requisito de ser otorgado en escritura pública.

La cláusula tercera del contrato dispone, en parte, lo siguiente:

"TERCERA: Con el propósito de llevar a cabo las actividades agrícolas y poder efectuar otros gastos que son necesarios para el cultivo de caña de azúcar en LOS BIENES, EL DEUDOR ha concertado con LA COOPERATIVA un préstamo refaccionario, al que más adelante se hace referencia como 'EL PRÉSTAMO', por la cantidad que más adelante se dirá, sujeto a las disposiciones de la ley aprobada por la Asamblea Legislativa de Puerto Rico el día diez de marzo de mil novecientos diez, tal como ha sido sucesivamente enmendada, el cual se lleva a cabo bajo las siguientes estipulaciones:

"(a) En virtud del presente contrato LA COOPERATIVA concede a EL DEUDOR un préstamo de dinero hasta la suma de un mil dólares ($1,000) durante cada una de las cosechas de mil

---

devengarán 25 centavos cuando el importe del préstamo no exceda de $1,000; y 50 centavos cuando exceda de $1,000; *Disponiéndose,* que cuando el contrato de refacción sea anotado en más de dos libros por radicar las fincas en diferentes términos municipales, se cobrarán derechos por una anotación extensa y las demás concisas.

"(c) Por la inscripción de contratos de siembras y moliendas de cañas, se cobrará $1 por las anotaciones o notas marginales concisas, y por las anotaciones o notas marginales extensas, se cobrarán $2, si la plantación de caña objeto del contrato, no excede de 50 cuerdas; $3 si dicha plantación de caña no excede de 100 cuerdas; y 10 centavos por cada cuerda o fracción de cuerda que exceda de las primeras 100 cuerdas de dicha plantación de cañas.

"(d) Cuando las partes cancelen voluntariamente las anotaciones antes de su caducidad, pagarán la mitad de los derechos previstos en los números anteriores. Los derechos de que habla esta Ley serán pagados en sellos de rentas internas que el registrador fijará y cancelará en el documento al pie de la constancia de su anotación; *Disponiéndose,* que cuando en los contratos de refacción agrícola en que el préstamo no exceda de dos mil quinientos (2,500) dólares sea una parte o intervenga directa o indirectamente corporaciones, asociaciones o agencias creadas en virtud de leyes del Congreso de los Estados Unidos de América, o asociaciones cooperativas para fines no pecuniarios organizadas de acuerdo con las leyes de Puerto Rico, para dar facilidades de crédito a los agricultores, las anotaciones y cancelación de dichos contratos se extenderá por los Registradores libre de todo derecho."

novecientos cincuenta y cuatro, mil novecientos cincuenta y cinco, y mil novecientos cincuenta y seis, para los fines anteriormente relacionados en las cláusulas segunda y tercera de este contrato, y EL DEUDOR se obliga a invertir dicha cantidad con arreglo a los mejores métodos en uso en Puerto Rico, en el cultivo, desarrollo, preparación y administración de las plantaciones de cañas de azúcar en LOS BIENES y el corte y arrimo de cañas de azúcar allí sembradas hasta la factoría de la Cooperativa Azucarera Los Caños, donde se han de moler y convertir en azúcar."

El documento cuya inscripción se solicita no envuelve tres contratos distintos de préstamo, sino un solo contrato de refacción agrícola. Un contrato de préstamo requiere, para su perfeccionamiento como tal, que haya mediado previamente la entrega del dinero. 3 Valverde, Tratado de Derecho Civil Español, pág. 404, 3ra. ed. En este caso quedó perfeccionado un solo contrato de refacción agrícola, estableciéndose obligaciones bilaterales a ser cumplidas en el futuro mediante actos o tractos sucesivos. La obligación de la acreedora refaccionaria ha de cumplirse mediante las entregas sucesivas de $1,000 cada año y la obligación del agricultor o deudor refaccionario ha de cumplirse mediante la devolución de las sumas recibidas, en tractos sucesivos, durante tres años. Las obligaciones de tracto sucesivo son "aquéllas que imponen una serie de actos de ejecución reiterada durante cierto tiempo". 2 Castán, Derecho Civil Español, pág. 495. Tal como se indica en 1 De Buen, Derecho Civil Común, pág. 467, "según que la prestación haya de ser realizada en un solo acto o en una serie de ellos, distínguense las obligaciones de tracto único de las de tracto sucesivo". El hecho de que las obligaciones creadas en el documento aquí envuelto han de cumplirse mediante actos sucesivos e independientes no desvirtúa la realidad jurídica de que se trata de un solo contrato, ya que en un solo contrato pueden crearse obligaciones de tracto sucesivo. La forma del cumplimiento no afecta la naturaleza intrínseca del contrato. El hecho de que el cumplimiento haya de efectuarse mediante actos independientes no conlleva de por sí la existencia de contratos independientes.

Alega la recurrente que si las partes hubiesen optado por otorgar tres contratos independientes, de préstamos de $1,000 por cada una de tres cosechas, cada uno de esos contratos hubiese sido inscribible, sin cumplirse con los requisitos ya señalados, y que, por lo tanto, la negativa a permitir la inscripción por el hecho de que se hayan agrupado tres contratos, según la recurrente, en un solo documento, equivale a imponer un requisito meramente de forma. Pero puede haber consecuencias importantes en cuanto a la validez y efectividad de las obligaciones creadas, de seguirse una forma o la otra. De otorgarse tres contratos en tres documentos distintos, cada uno de esos contratos podría estar sujeto a un examen jurídico independiente o separado a los fines de determinar su validez o eficacia. Las partes optaron en este caso por otorgar un solo contrato en un solo documento, y ella fué la forma que las partes seleccionaron, en el ejercicio de su libre albedrío, debiendo estar sujetas, por lo tanto, a las consecuencias de su selección.

*Debe confirmarse la actuación del Registrador.*

El Juez Asociado Sr. Sifre concurre en el resultado.